UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA BURNS, individually and on behalf
of all similarly situated individuals,

      PLAINTIFFS,                 CASE NO.:  2:18-CV-00625-UA-MRM

v.

MLK EXPRESS SERVICES, LLC, and
AMAZON.COM SERVICES, INC.,

      DEFENDANTS.
_____/

**JOINT MOTION FOR SETTLEMENT APPROVAL AND
INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff, Linda Burns ("Plaintiff"), and MLK Express Services, LLC ("MLK Express") (collectively the "Parties"), seek approval of a settlement of wage and hour claims on a collective basis.

**I.  BACKGROUND**

    A.  PLAINTIFF'S CLAIMS.

On September 18, 2018, 2018, Plaintiff filed this case on behalf of herself and similarly situated individuals to recover overtime pay under the Fair Labor Standards Act ("FLSA"), against MLK Express Services, LLC. ("MLK Express"), and Amazon.com Services, Inc. ("Amazon"). The Collective Action Complaint and Demand for Jury Trial ("Complaint") alleges that Plaintiff and other similarly-situated employees (collectively the "Drivers"[1]) worked for

---

[1] The definition of "Drivers" is more fully defined as any individual who is eligible to be a member of the proposed collective in this lawsuit, including Plaintiff and all other local delivery drivers or driver associates who were paid by MLK Express Services, LLC, and who worked out of 4642 Elevation Way, Fort Myers, Florida, and who were solely paid a purported "day rate," within the last three years from the

MLK Express delivering items purchased from Amazon.com to the customers who purchased those items. *See* D.E. 1 at ¶ 7. Although MLK Express considered the Drivers employees of only itself, the Complaint alleges that Amazon jointly employed them. *See id*. ¶ 12.

On August 3, 2017, MLK Express began delivering packages to customers who ordered from Amazon.com and related entities in the Fort Myers area. It operated out of a facility at 4642 Elevation Way, Fort Myers, Florida. It paid the Drivers a flat daily rate from on or about August 3, 2017 through on or about May 19, 2018. Plaintiff claims that the flat daily rate she and the other Drivers were paid did not adequately compensate them for their overtime hours worked. Specifically, she alleges that she and the other Drivers regularly worked in excess of 40 hours in individual workweeks, often working over 60 hours in individual workweeks. *Id.* at ¶¶ 26, 27. However, no matter how many hours she and the Drivers worked, the Complaint alleges, MLK Express did not pay any overtime premiums. *Id*. at ¶ 28.

The Complaint alleges that Defendants violated the FLSA by failing to pay the Drivers one and one-half times their regular rate of pay for all hours over 40 in a workweek. The one-count Complaint alleges failure to pay overtime wages under the FLSA and seeks certification of a collective action under Section 216(b) of the FLSA, unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs. *Id*. ¶¶ 17-22,

On October 3, 2018, Plaintiff filed a Notice of Consent to Join on behalf of Opt-In Plaintiff, Andrea Helm, in which Helm affirmed that she was similarly situated to Plaintiff, asserting unpaid overtime and/or minimum wages (D.E. 5).

MLK Express disputes that Plaintiff or the other Drivers are owed any wages and have denied that they violated the FLSA. MLK Express particularly denies that Plaintiff and any

---

date of the proposed notice to potential claimants of a collective action lawsuit, as more fully described below.

similarly-situated employees regularly worked in excess of 40 hours as claimed such that they were not entitled to unpaid overtime premiums.

  B. THE PARTIES' SETTLEMENT NEGOTIATIONS.

  Prior to engaging in full litigation, including formal discovery, in an effort to avoid further costs and burdens of litigation, the Parties conducted extensive informal discovery in order to exchange the information that they would need to engage in meaningful settlement negotiations. Specifically, MLK Express provided available payroll records to Plaintiff's counsel, to aid the Parties in pre-discovery settlement negotiations. These records included information documenting the total amount of wages Plaintiff and each of the Drivers received during each work week and the dates on which each Driver worked. Nonetheless, it was recognized that, in error, MLK Express did not properly maintain documentation recording the specific hours worked by each Driver. Thus, the Drivers' actual hours were not fully documented by MLK Express. However, MLK Express conferred with Plaintiff regarding its policies and practices and shared information regarding its views on the typical length of time it believes it takes Drivers to complete their delivery routes. Plaintiff had a different view of the number of hours that she and the Drivers worked. Accordingly, the Parties discussed and negotiated around reasonable assumptions that they would use to determine the hours in each workweek that each Driver would be credited with for purposes of settlement discussions.

  As a further part of negotiations, MLK Express provided hourly records from the time period shortly after the employees were moved to an hourly rate pay schedule in May 2018. While this period of time is not subject to the claims in this matter, MLK Express believed that the records were probative, because MLK Express did not alter its daily work schedules once it converted from a "daily rate" to an hourly rate. MLK Express, therefore, asserts these records show an accurate

representation of the Plaintiff and the Drivers hours worked *during* the relevant time-period within which Plaintiff claims that she and the Drivers are entitled to additional overtime compensation. According to these records, the Drivers recorded an average of between 29.89 and 35.93 hours per workweek. The records show that most Drivers worked around or below 40 hours in a workweek. Moreover, these records reflected hours that were consistent with the observations and the experience of MLK Express's representatives.

Negotiations continued as the Parties reviewed and assessed these payroll records. Eventually the Parties began to discuss the concept that Plaintiff and the Drivers' hours worked varied during the "peak" period and non-peak periods. The "peak" period is the period of time starting on or about November 12 and running through on or about January 7 of the following year when there are more package deliveries in preparation for the holiday season. Plaintiff and the Drivers worked more hours around the holidays when orders from Amazon.com increased. The Parties considered these facts and the information exchanged as they engaged in arm's-length negotiations.

There are *bona fide* disputes as to whether Plaintiff and the other Drivers worked in excess of 40 hours and are entitled to any amounts under the FLSA in each workweek. MLK Express continues to deny any wrongdoing in the matter. The Parties mutually evaluated the risk inherent in proceeding to trial and the costs of extended litigation and determined the settlement reached was an appropriate compromise to end this litigation. Plaintiff and Plaintiff's Counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiff and the Drivers. Beyond resolving this matter, the Parties' proposed settlement benefits Plaintiff and the Drivers by avoiding any delay of their receipt of any purportedly unpaid wages. The materials terms of the settlement are as follows, subject to Court approval.

## II.  SUMMARY OF THE SETTLEMENT TERMS

The Parties attach a copy of the Settlement Agreement, Release, and Waiver (the "Agreement"), along with all exhibits to that document, as Exhibit "A" to this Motion, which includes every term and condition of the Parties' settlement. The settlement's key terms as reflected in the Agreement are summarized below.

### A. FLSA COLLECTIVE DEFINITION.

To affect the Parties' compromise, and solely to affect this compromise, Plaintiff and MLK Express consent, by joint stipulation filed contemporaneously with this Motion, to this Court's entering an Order, certifying this matter as a collective action under Section 16(b) of the FLSA, consisting of the following:

> All local delivery drivers or delivery associates who were paid by MLK Express Services, LLC and worked out of the 4642 Elevation Way, Fort Myers, Florida facility, and who were paid a purported "day rate" from on or about August 1, 2017[2] through on or about May 19, 2018[3] (the "Drivers").

### B. SETTLEMENT FUND.

On behalf of MLK Express, the maximum total sum of up to Sixty-Three Thousand and 00/100 U.S. Dollars ($63,000.00) shall be made available to Plaintiff and any Claimants. This maximum total sum will be apportioned as individual settlement payments to Plaintiff and any Claimants as follows:

> i. Payment of allegedly owed overtime wages and liquidated damages to Plaintiff, individuals who have already joined this case by filing their Consents to Join, and Drivers who return an executed Consent to Join Collective Action form through the Court-supervised notice process (and thereby become "Claimants" under the Agreement); and
>
> ii. Payment to Plaintiff in the amount of One Thousand and 00/100 U.S. Dollars

---

[2] The date when MLK Express began operating.
[3] The date when MLK Express converted to an hourly rate pay schedule.

>>($1,000.00) as a service award for her assistance in bringing this litigation and diligence in bringing this action on behalf of the collective, as approved by the Court.

The Parties submit that the proposed settlement payments provide substantial relief to Plaintiff and any Claimants, who will be eligible to partake in their share of the fund in proportion to their *pro rata* share of hours worked during the relevant time period, pursuant to the reasonable assumptions made by the Parties about the hours worked by Plaintiff and Claimants during the "peak" and "non-peak" periods.

    **C.**    **NOTICE TO DRIVERS.**

Within twenty-one (21) days after the Court enters an order granting certification, Defendants will provide Plaintiff's Counsel with a list of the Drivers, together with their last known address, last known e-mail addresses, last known telephone numbers (both home and cell), date of birth, beginning and (with respect to former workers) ending date of work at the Fort Myers facility (the "Opt-In List"). Subject to Court-Approval, within fourteen (14) days of receiving the list, Plaintiff's counsel will issue the Notice (in the form approved by the Court) to all Drivers.

The Parties have agreed, subject to Court-approval, to a notice plan which is designed to provide notice to all Drivers.[4] This plan is set out in detail in the Parties' Stipulation for Conditional Certification, filed herewith, and includes, for settlement purposes only, the following: (a) a 45-day period for Drivers to opt-in to the litigation; (b) notice by U.S. Mail and email; (c) a mechanism to locate correct addresses for each Driver whose notice is returned as undeliverable; and (d) a

---

[4] MLK Express's position as to the notice process detailed below is solely to affect the Parties' compromise. This filing shall not and does not serve as an admission or concession that the contemplated notice process is fair, reasonable, or appropriate in any other matter in any court or tribunal or that collective treatment is otherwise appropriate. MLK Express expressly reserves the right to maintain a challenge to any other proposed conditional certification or notice process, or to seek decertification, in any other matter in any court or tribunal.

6

reminder notice by U.S. Mail and email before the end of the period to opt_in to all Drivers who have not yet joined the Settlement by returning their Consents to join. Copies of the proposed Notice and Consent to Join Forms are attached to the Agreement (Exhibit A to this Motion), as Exhibits "3" and "4."

        D.      INDIVIDUAL SETTLEMENT AMOUNTS.

To assist the consideration and review of the proposed settlement, an estimated settlement amount was calculated for Plaintiff, and each individual Driver who could file a Consent to Join in the settlement as such individual's *pro rata* share of the maximum total settlement amount available to Plaintiff and the Drivers. In the Agreement, these estimated sums are referred to as Plaintiff and each Drivers' respective Estimated Individual Settlement Amount. This sum is calculated by presuming—for settlement purposes only—that Plaintiff and each Driver had:

    i.   approximately 9.5 hours worked per day for each day worked by the Plaintiff or Driver during the non-peak periods of approximately August 1, 2017 through November 11, 2017, and approximately January 7, 2018 through May 19, 2018, and

    ii.   approximately 11.5 hours worked per day for each day worked by the Plaintiff or Driver during the peak period of approximately November 12, 2017 through January 6, 2018.

Attached as Exhibit "2" to the Agreement (Exhibit "A" to this Motion), for demonstration purposes, is a chart showing Plaintiff's, Claimant's, and each Drivers' respective Estimated Individual Settlement Amounts.

Under the Agreement, Plaintiff and each Claimant (*i.e.*, Drivers who become Claimants by returning their valid, timely Consent to Join forms) will be entitled to receive their Estimated Individual Settlement Amount of either the amount calculated pursuant to the formulas set out in the agreement, or Fifty U.S. Dollars and 00/100 ($50.00), whichever is greater. These amounts

will be subject to adjustments that will be made once the opt-in period has closed. The adjustments will only ever increase the amount of settlement funds allocated to Plaintiff and each Claimant—the amounts allocated will never decrease. The method for adjusting Plaintiff and each Claimant's settlement allocation is set out in detail in the Agreement. It provides that a portion of the settlement amount that is unclaimed will be redistributed amongst Plaintiff and the Claimants. However, any such redistribution shall be limited, and no settlement payment to Plaintiff or any individual Claimant shall exceed one hundred fifty percent (150%) of that Plaintiff's or Claimant's Estimated Individual Settlement Amount. The payments that Plaintiff and Claimants will actually receive are referred to in the Agreement as Final Individual Settlement Amounts.

The redistribution provisions are designed to distribute as much of the maximum of $63,000 in settlement funds as possible to Plaintiff and the Claimants. This, however, is subject to the 150% caps in order to avoid a windfall to any individual. Accordingly, any amounts that are unclaimed and not redistributed pursuant to the Agreement's terms will revert to MLK Express.

  E.  RELEASE OF CLAIMS.

In exchange for the settlement payments available under the Agreement, Plaintiff and the Claimants, by virtue of submitting executed Consent to Join forms indicating their desire to participate in the Lawsuit and the settlement, will release all wage and hour claims that were brought or could have been brought in the litigation as to all defendants and all other Related Parties, as defined in the Agreement. The full language of the release is set out in the Agreement; and so that all Claimants understand that they are releasing such claims, the release's full language is also included as part of the proposed Notice as Appendix "A."

F.   **SETTLEMENT ADMINISTRATION AND DISTRIBUTION.**

Subject to Court approval, Plaintiff's counsel will administer the settlement, including issuing the Notice, mailing the settlement checks, and providing status updates to MLK Express about the administration and distribution process. Further details regarding settlement administration, including the timing of payment, are set out in the Agreement.

G.   **PAYMENT OF PLAINTIFF'S ATTORNEYS' FEES AND COSTS.**

In addition to and separately from the amounts payable to Plaintiff and Claimants, as described in Section D, above, MLK Express agrees that it will not oppose Plaintiff's anticipated motion for Court approval of reasonable attorney's fees and expenses, so long as that motion does not seek a total of more than Thirty-One Thousand U.S. Dollars and 00/100 ($31,000.00) in attorney's fees and expenses.  Attorneys' fees and expenses were discussed and negotiated separately and apart from the amounts payable to the Plaintiff and Claimants so as not to affect Plaintiff's and Claimants recovery in this Lawsuit, and only after other material terms in the Settlement were agreed upon.

III.   **THE COURT SHOULD APPROVE THE SETTLEMENT AS A FAIR AND REASONABLE COMPROMISE OF PLAINTIFF'S DISPUTED CLAIMS**

A.   **STANDARD OF REVIEW.**

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), permits employees to settle and release FLSA claims against an employer if the parties present the trial court a proposed settlement and the trial court enters an order approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1353 (11th Cir. 1982); *see also Schulte, Inc., v Gangi*, 328  U.S. 108 (1946). Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food*, 679 F. 2d at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the court

may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id. at* 1354.

### B. ALL RELEVANT FACTORS SUPPORT APPROVING THE PROPOSED SETTLEMENT AS FAIR AND REASONABLE

In determining whether the settlement is fair and reasonable, the court considers the following factors:

(1) The existence of fraud or collusion behind the settlement;
(2) The complexity, expense, and likely duration of the litigation;
(3) The stage of the proceedings and the amount of discovery completed;
(4) The probability of plaintiff's success on the merits;
(5) The range of possible recovery; and
(6) The opinions of the counsel.

*See Leverso v. SouthTrust Bank*, 18 F. 3d 1527, 1531 n. 6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Or1-22JGG, 2007 WL 328792, at **1-2, (M.D. Fla. Jan. 8, 2007); *see also Robinson v. Anytime Rentals, Inc.*, No. 2:14-CV-528-FTM-38CM, 2016 WL 1728745, at *2 (M.D. Fla. Apr. 13, 2016), report and recommendation adopted, No. 2:14-CV-528-FTM-38CM, 2016 WL 1704193 (M.D. Fla. Apr. 27, 2016). In reviewing such factors, there is a strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 WL 328792 at * 2-3; *see also Cotton v. Hinto,* 559 F. 2d 1326, 1331 (5th Cir. 1977). All such factors support approving settlement in this case.

#### 1. There Is No Fraud in this Case.

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seems fair. *See Helms v. Central Florida Regional Hospital*, No. 6:05-cv-383-Orl-22TGG, 2006 WL 3858491, at *4 (M.D. Fla. Dec. 26, 2006). Here, the parties are represented by counsel of their choice. Plaintiff is represented by Neil L. Henrichsen of Henrichsen Siegel, PLLC and Laura E. Reasons, Kenneth P. Abbarno, and Mark

10

M. Abramowitz of DiCello Levitt Gutzler, LLC. MLK Express is represented by Jennifer Fowler Hermes and John Getty of Williams Parker Harrison Dietz & Getzen, PA. All Parties are represented by experienced labor and employment counsel with extensive FLSA experience. As discussed below, the amount to be paid is fair and well within the range of reasonable possible recoveries. Accordingly, this factor favors approving the settlement as fair and reasonable.

### 2. The Complexity, Expense, and Length of Litigation Support Early Resolution.

The complexity, expense, and length of litigation heavily weigh in favor of early resolution in this Lawsuit. The cost of protracted litigation, which would be required for the Parties to pursue their claims and defenses and obtain a final judgment on the merits, could be high. Specifically, the Parties would need to conduct discovery and potentially brief certification, decertification, and dispositive motions—not to mention trial. The proposed settlement minimizes such costs, preserving the Parties' and the Court's time and resources. This factor also favors the Settlement's approval.

### 3. The Parties Have Sufficiently Investigated this Case Prior to Engaging in Settlement Discussions.

There has been sufficient preliminary investigation and exchange of information to allow the Parties to undertake a fair and reasonable settlement. The Parties voluntarily exchanged, on an informal basis, legal analyses and evidence addressing Plaintiff's and MLK Express's respective contentions about whether the employees worked more or less than 40 hours each workweek. Plaintiff described her initial perceptions of the facts supporting her claims and those of the Drivers, and MLK Express provided additional facts that assisted Plaintiff in understanding MLK Express's position and defenses. MLK Express voluntarily shared the payroll information supporting its position, which all Parties took several months to review, consider, and assess during the lengthy negotiating process. MLK Express has provided Plaintiff

with existing records from the relevant time period; information regarding its position on its policies, practices, and hours of work requirements during that time period; and time records from a later time period that the Parties believe approximate the average hours worked during the relevant time period. The Parties have discussed Plaintiff and the Drivers' schedules and alleged hours, as both Parties view the facts, during the relevant time period. The Parties agree that they exchanged all critical information necessary to assess the claims of Plaintiff's and the Drivers. Accordingly, this factor favors approval of the Settlement.

### 4. Probability of Success on the Merits Is in Dispute.

MLK Express vigorously disputes the merits of Plaintiff's claims and intended to seek to have as much of the dispute resolved through motion practice as warranted after deposing Plaintiff. Plaintiff maintains her belief that she would be able to assert sufficient evidentiary issues to withstand dispositive motion practice, achieve and maintain certification, and succeed at trial. Accordingly, protracted litigation would be likely if the proposed settlement is not approved. Because the Parties each face risks of continued litigation, this factor also supports approval of the Settlement.

### 5. The Range of Possible Recovery Supports Approving Settlement.

The possible range of the total back wages and liquidated damages in this case varies significantly depending on the average hours an employee was presumed to have worked each day during a workweek. For Plaintiff and all Drivers combined, the range could extend from $0.00 on a total defense victory up to the following:

- $21,285.77 if it is presumed an employee worked 8 hours each day during "non-peak" periods and 10 hours during the "peak" period;[5]

---

[5] As noted in the Background, the "peak" period is the period of time starting on or about November 12 and running through on or about January 7 of the following year when there are more package deliveries in preparation for the holiday season.

- $46,714.59 if it is presumed an employee 9 hours each day during "non-peak" and 11 hours during "peak";

- $67,195.11 if it is presumed an employee 10 hours each day during "non-peak" and 12 hours during "peak";

- $91,565.53 if it is presumed an employee 11 hours each day during "non-peak" and 13 hours during "peak"; or

- $112,233.50. if it is presumed an employee 12 hours each day during "non-peak" and 14 hours during "peak."

The Agreement provides for individual payments for a cumulative or aggregate total of Sixty-Three Thousand U.S. Dollars and 00/100 ($63,000.00)—less any representative service award.[6] As observed above, this cumulative or aggregate amount is based on a presumption that the Drivers averaged about 9.5 hours per day during the "non-peak" period and about 11.5 hours per day during the "peak" period.[7]

Notwithstanding these presumptive hours, which were arrived at for settlement purposes only, a somewhat-significant number of Drivers would not be credited with any overtime during the relevant workweeks. Nevertheless, in order to bring this matter to a close, the Parties agreed that each Claimant will receive a minimum of $50.00. In exchange, such individuals who participate in the proposed Settlement would agree to release all wage and hour claims that were brought or could have been brought in the litigation. Because the settlement represents a reasonable compromise given the facts and risks the Parties faced, this factor supports approval.

---

[6] Pursuant to the Agreement, it is contemplated that Plaintiff Burns will be seek to be awarded a $1,000.00 service award, subject to Court approval, and which will be deducted from the Settlement Fund). Plaintiff will separately move for approval of the service award along with her motion for approval of her counsel's fees and expenses (as noted above, counsel's fees and expenses will not come from the Settlement Fund). MLK Express agrees not to oppose Plaintiff's motion for approval of the service award.

[7] This specific presumption was a negotiated compromise between the Parties. The Parties have agreed that this presumption does not represent an admission of liability or concession by MLK Express and, moreover, it is *without prejudice* to the rights of MLK Express in any matter before any court or tribunal involving any putative collective action members or any other party.

    **6.**   **Counsel for the Parties Agree the Proposed Settlement Represents a Fair Resolution.**

  Given the facts, law, and circumstances of this case, counsel for Plaintiff agrees that the proposed settlement is a fair and reasonable compromise of Plaintiff's claims. Counsel for MLK Express concurs that the proposed settlement is a reasonable means of avoiding litigation and the costs of defense. This factor also supports approval.

    **C.**   **THE MANNER IN WHICH SETTLEMENT FUNDS ARE REDISTRIBUTED ARE REASONABLE UNDER THE CIRCUMSTANCES.**

  The aggregate settlement fund of $63,000 represents the maximum total amounts the Drivers would collectively receive if there were full participation. As referenced above, a chart detailing what each individual would receive in that scenario has been prepared and provided for the Parties' and the Court's consideration.

  Recognizing that it is possible that not all Drivers may consent to participate in this Settlement, the Parties' negotiated Settlement includes provisions through which unclaimed funds are redistributed—in whole or in part—to those individuals who, in fact, participate in the proposed Settlement. For instance, if 75% or more of the outstanding funds are claimed, then the entire aggregate settlement fund of $63,000 will be tendered to those Claimants who participate. The unclaimed funds will be redistributed on a *pro rata* basis to those individuals.

  The Agreement sets out the redistribution methodology in greater detail. The goal of the redistribution provision is to give Plaintiff and the Claimants as much relief as possible while avoiding a windfall. To that end, no individual who participates in the proposed settlement will receive more than 150% of the amount they would have received had there been full participation. Moreover, the total amount subject to distribution and redistribution will slightly decrease if there is less than 75% participation and decrease by half if there is less than 50% participation. Considering the foregoing, the Parties submit to this Honorable Court that these

provisions were negotiated in good faith and are reasonable. Funds remaining after the redistribution of up to 150% of the estimated individual settlement amounts will revert to MLK Express. However, the Parties are mindful that the redistribution is designed to provide as large a recovery as possible under the terms of the Settlement to Plaintiff and the Drivers, while also avoiding a windfall.

### D. THE ATTORNEY'S FEES WILL BE DETERMINED BY THE COURT.

No portion of the settlement dollars available to be paid to Plaintiff and the Drivers will be paid to Plaintiff's attorneys. The Parties have agreed that Plaintiff will file a separate motion, asking the Court to approve an award of attorneys' fees and expenses. Defendants have agreed that they will not oppose such a motion if that motion does not seek an award in excess of Thirty-One Thousand U.S. Dollars and 00/100 ($31,000.00). Accordingly, because the settlement is reasonable on its face and Plaintiff's recovery has not been adversely affected by the amount of the fees paid to their attorneys, the Court should approve the settlement.

### E. A COLLECTIVE ACTION REPRESENTATIVE SERVICE AWARD, IF ANY, WILL BE DETERMINED BY THE COURT.

The parties have agreed that Plaintiff, Linda Burns, may separately move the Court for a service award of One Thousand U.S. Dollars and 00/100 ($1,000.00) for her services as a representative for the collective action, which MLK Express does not oppose and which shall be deducted from the aggregate settlement total of $63,000.00.

### F. THERE IS NO CONFIDENTIALITY PROVISION IN THE PROPOSED SETTLEMENT.

This Court has previously held that settlement agreements containing confidentiality provisions contravene the public policy of the FLSA. *Dees v Hydradry*, Inc., 706 F. Supp. 2d 1227, 1237 (M.D. Fla. 2010). Consequently, the Parties have proposed an Agreement in this FLSA case that does not include a confidentiality provision.

...

G.  **THERE IS NO GENERAL RELEASE IN THE PROPOSED SETTLEMENT.**

This Court has previously held that, absent additional consideration, settlement agreements involving FLSA claims should not include a general release of any possible claim against the defendants. *Dees*, 706 F. Supp. 2d at 1237 (M.D. Fla. 2010). To that end, the Parties have proposed a settlement agreement in this FLSA case that is limited to wage and hour claims that were brought or could have been brought in the litigation.

IV.  **CONCLUSION**

The Parties respectfully request that the Court: (1) approve the proposed Settlement Agreement, Waiver, and Release; (2) upon Plaintiff's request, approve an award of Plaintiff's reasonable attorneys' fees and expenses; (3) upon Plaintiff's request, approve the $1,000.000 service award to Plaintiff Burns; and (4) dismiss the case without prejudice, to automatically convert to a *with prejudice* dismissal on a date certain when the Parties will have had adequate time to fully effectuate the terms of this Agreement, including making all payments under the Agreement.

Respectfully submitted this 24th day of May, 2019.

|  |  |
|---|---|
|  | **WILLIAMS PARKER HARRISON DIETZ & GETZEN** |
| */s/ Laura E. Reasons* | */s/ John C. Getty* |
| Laura E. Reasons | Jennifer Fowler-Hermes |
| **DICELLO LEVITT GUTZLER LLC** | Florida Bar No. 0127442 |
| Ten North Dearborn Street | Primary email: jfowler-hermes@williamsparker.com |
| Eleventh Floor |  |
| Chicago, IL 60602 | Secondary email: |
| Telephone: (312) 214-7900 | drobinson@williamsparker.com |
| Facsimile: (312) 253-1443 | John C. Getty |
| lreasons@dicellolevitt.com | Florida Bar No. 1013911 |
|  | Primary email: jgetty@williamsparker.com |
| Kenneth P. Abbarno | 200 South Orange Avenue |
| Mark M. Abramowitz | Sarasota, Florida 34236 |
| **DICELLO LEVITT GUTZLER LLC** | Telephone: (941) 366-4800 |
| 7556 Mentor Ave | Facsimile: (941) 954-3172 |
| Mentor, OH 44060 |  |
| Telephone: (440) 953-8888 | ***Attorney for Defendant MLK Express Services, LLC*** |
| Facsimile: (440) 953-9138 |  |
| kabbarno@dicellolevitt.com |  |
| mabramowitz@dicellolevitt.com |  |

Neil L. Henrichsen
Florida Bar No. 111503
**HENRICHSEN SIEGEL, PLLC**
301 W Bay Street, 14th Floor
Jacksonville, FL 3220
Telephone: (904) 381-8183
Facsimile: (904) 242-2800
nhenrichsen@hslawyers.com

***Counsel for Plaintiff Linda Burns***