# EXHIBIT A

## S<small>ETTLEMENT</small> A<small>GREEMENT</small>, W<small>AIVER</small>, <small>AND</small> R<small>ELEASE</small>

This Settlement Agreement, Waiver, and Release ("Agreement") is made by and between Linda Burns, individually and on behalf of all those similarly situated ("Plaintiff"), and those who will have opted into the lawsuit (collectively referred to as "Claimants"), and Defendant, MLK Express Services, LLC, ("MLK Express). Plaintiff, Claimants, MLK Express, and the Released Parties (as defined in *Paragraphs 1, 3, and/or 7* below) are collectively referred to within this Agreement as the "Parties."

### RECITALS

**WHEREAS**, Plaintiff and Claimants were employed at various time by MLK Express to deliver packages to Amazon customers in Florida;

**WHEREAS**, Plaintiff filed a lawsuit against MLK Express along with Defendant, Amazon.Com Services, Inc., in the collective action lawsuit styled *Linda Burns on behalf of herself and all similarly situated individuals v. MLK Express Services, LLC and Amazon.Com Services, Inc.*, Case No. 2:18-cv-00625-UA-MRM in the Middle District of Florida, Fort Myers Division, alleging violations of the Fair Labor Standards Act (the "Lawsuit");

**WHEREAS**, MLK Express denies the allegations in the Lawsuit;

**WHEREAS**, certain Claimants have submitted or will submit Consent to Join Collective Action forms, indicating their respective wish to take part in this collective action, the settlement, and to release all claims for unpaid compensation or wages of any kind, as further defined in Paragraph 7 below, in exchange for the rights and benefits granted by the settlement; and

**WHEREAS**, the Parties wish to and agree to resolve and settle all claims in the Lawsuit.

**NOW, THEREFORE**, in exchange for the promises and consideration set forth below, the sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Plaintiff:**  "Plaintiff" refers to the named Plaintiff, Linda Burns.

2. **Driver(s):**  "Driver" or "Drivers" refers to every individual, including Plaintiff, who would be a member of the collective in the Lawsuit, defined as "all local delivery drivers or delivery associates who were paid by MLK Express Services, LLC and worked out of the 4642 Elevation Way, Fort Myers, Florida facility, and who were paid a purported 'day rate' from on or about August 1, 2017 through on or about May 19, 2018."

3. **Claimant(s):**  "Claimant" or "Claimants" refers to every Driver who is a member of the collective in the Lawsuit who, by their submission of a Consent to Join Collective Action ("Consent to Join") form indicated that they wished to take part in this collective action, and agreed to be bound by the settlement reached on their behalf by the submission of the Consent to Join form. "Claimants" includes Andrea Helm.

**4.     Payments in Exchange for Release of Claims:** In exchange for and in consideration of Plaintiff's and Claimants' respective release of the claims raised in the Lawsuit, Plaintiff and Claimants will each receive checks for back wages and liquidated damages calculated in the manner detailed in subsection (b) below (the "Final Individual Settlement Amount"). Plaintiff's and Claimants' Individual Estimated Settlement Amounts, when collectively totaled together (before applicable deductions and withholdings) will equal up to **Sixty-Three Thousand U.S. Dollars and 00/100 ($63,000.00)** (the "Gross Settlement Amount"). The Parties represent, warrant, and agree that these amounts were negotiated based on a thorough review of the Drivers' pay records (including Plaintiff's and Claimants' pay records) and other documentation produced by MLK Express as part of settlement negotiations. Moreover, this Agreement compromises claims that are contested in good faith. The Parties further represent, warrant, and agree that the amounts paid in connection with this Agreement and the other terms of the settlement were negotiated in good faith by the Parties, and terms and conditions of this Agreement reflect an agreement that was reached voluntarily after consultation with competent legal counsel with respect to a *bona fide* dispute regarding alleged wages due.

The Parties agree this negotiated sum does not represent an admission by any Released Party that Plaintiff or the Claimants or any other alleged employee of MLK Express, in fact, worked the number of hours utilized to derive this negotiated sum. The Parties further agree that the negotiated settlement amount and the formula and presumptions described below to derive that amount *is for settlement purposes only* and shall not be used for any purpose whatsoever in any subsequent proceeding in this action or any other action in any court or tribunal and does create any presumptions or concessions of any fact, matter, or allegation in any other litigation before any court or tribunal, including any matters that involve or purport to involve similarly-situated employees who worked for any defendant to this action, including specifically MLK Express.

**a.     Service Award:**   Subject to Court approval, Plaintiff will receive a service or incentive award of **One Thousand U.S. Dollars and 00/100 ($1,000.00)** from the Gross Settlement Amount for her time, effort, and willingness to participate in and prosecute the Lawsuit and achieve settlement.

**b.     Plaintiff's and Claimants' Estimated and Final Individual Settlement Amounts:** The Net Settlement Amount shall be the amount remaining from the Gross Settlement Amount after deducting the Service Award under subsection 3(a) above, or **Sixty-Two Thousand U.S. Dollars and 00/100 ($62,000.00)**.

An Estimated Individual Settlement Amount is calculated for each Driver (*i.e.*, each individual who could file a Consent to Join and become a Claimant).[1] This estimated amount represents such Driver's *pro rata* share of the Net Settlement Amount, based on that individual's total

---

[1]     This section provides a streamlined description of the formula utilized to the calculate Plaintiff's and each Claimants' Estimated and Final Individual Settlement Amounts in accordance with the Parties' agreement. A full description of the formula utilized is attached as Exhibit "1," which controls the manner in which Plaintiff and each Claimant's respective settlement payment shall be calculated.

overtime hours worked during the relevant time period as calculated per workweek. Plaintiff and each of the Drivers' hours worked shall be determined based on allocating: (1) approximately 9.5 hours per day for each day worked by the Plaintiff or each Driver during the non-peak periods of August 1, 2017 through November 11, 2017, and January 7, 2018 through May 19, 2018, and (2) approximately 11.5 hours worked per day for each day worked by the Plaintiff or Driver during the peak period of November 12, 2017 through January 6, 2018. Plaintiff and each Driver will be entitled to receive their Estimated Individual Settlement Amount, or Fifty U.S. Dollars and 00/100 ($50.00), whichever is greater, subject to adjustments based on the other provisions with this Agreement.

Attached as Exhibit "2" to this Agreement, for demonstration purposes, is a chart representing Plaintiff's and each Drivers' Estimated Individual Settlement Amount.

To the extent not all Drivers participate in this settlement, there may be unclaimed funds from the Gross Settlement Amount (the "Undistributed Funds"). All or part of the Undistributed Funds will be allocated and redistributed to Plaintiff and Claimants on a *pro rata* basis (Plaintiff and each Claimants' "Redistribution Amount"). The individual Redistribution Amounts will be calculated by dividing Plaintiff or each Claimant's own Cumulative Back Wage Amount by the total aggregate of Plaintiff's and all Claimant's Cumulative Back Wage Amount multiplied by the total amount of the Undistributed Funds as determined by the overall Participation Rate. As used within this Agreement, "Participation Rate" refers to the percentage of the dollar amount cumulatively claimed by Plaintiff and Claimants—not the percentage of individuals who participate.

- If there is at least a seventy-five percent (75%) Participation Rate, then the full amount of Undistributed Funds will be redistributed to Plaintiff and Claimants in order to distribute the full Net Settlement Amount to Plaintiff and Claimants. If this Paragraph applies, in no event shall the aggregate of all Final Individual Settlement Amounts exceed the Net Settlement Amount.

- If there is at least a fifty percent (50%) but less than a seventy-five percent (75%) Participation Rate, then Undistributed Funds will be redistributed to Plaintiff and Claimants such that a total of 75% of the Net Settlement Amount is distributed to Plaintiff and Claimants. If this Paragraph applies, in no event shall the aggregate of all Final Individual Settlement Amounts exceed 75% of the Net Settlement Amount.

- If there is less than a fifty percent (50%) Participation Rate, then Undistributed Funds will be redistributed to Plaintiff and Claimants such that a total of fifty percent (50%) of the Net Settlement Amount is distributed to Plaintiff and Claimants. If this Paragraph applies, in no event shall the aggregate of all Final Individual Settlement Amounts exceed 50% of the Net Settlement Amount.

Plaintiff and each Claimants' respective Estimated Individual Settlement Amount, plus any Redistribution Amount, shall be referred to as their respective "Final Individual Settlement Amount." Once the Final Payment Schedule is certified in the manner set out below, then Plaintiff and each Claimant shall receive an individual payment that reflects their respective

Final Individual Settlement Amount, referred to as their "Final Individual Settlement Payment." Each Final Individual Settlement Payment shall be equally divided between back wages and liquidated damages.

However, the Final Individual Settlement Amount of the Plaintiff or each individual Claimant shall not exceed one hundred fifty percent (150%) of that Plaintiff's or Claimant's Estimated Individual Settlement Amount, or $75, whichever is higher. To the extent that a Final Individual Settlement Amount of a Plaintiff or each individual Claimant would exceed one hundred fifty percent (150%) of that Plaintiff or Claimant's Estimated Individual Settlement Amount, the excess shall be redistributed to Plaintiff or the other individual Claimants on a *pro rata* basis, as warranted and subject to the same 150% cap. If Undistributed Funds remain after redistributing them to the Plaintiff and Claimants such that Plaintiff and each Claimant's Final Individual Settlement Amounts are 150% percent of their Estimated Individual Settlement Amounts, then any remaining Undistributed Funds shall revert to MLK Express.

Before issuing any settlement payments, a final schedule of payments reflecting Plaintiff and each Claimant's respective Final Individual Settlement Amount as calculated per the terms above ("Final Payment Schedule") shall be prepared on behalf of MLK Express. Plaintiff's counsel shall review and approve the calculations and certify that the amount has been correctly calculated under this Agreement. Plaintiff and each Claimant, upon joining the case by filing their Consent to Join forms, represent and warrant that he or she authorize Plaintiff's counsel to certify the Final Payment Schedule and he or she waive any claim arising out of any alleged miscalculation of their Final Individual Settlement Amount. However, if any Plaintiff or Claimant asserts before the certification that the Final Payment Schedule is incorrect as to them, counsel for the Parties will undertake to investigate and resolve the issue in good faith and will make corrections or revisions as appropriate to ensure that each Plaintiff or Claimant receives the amounts to which they are entitled pursuant to the settlement.

    **4.** **Attorneys' Fees and Expenses:** In addition to and separately from the amounts payable under Paragraph 3 above, MLK Express agrees that it will take no position on Plaintiff's anticipated motion for Court approval of reasonable attorneys' fees and expenses, so long as that motion does not seek a total of more than Thirty-One Thousand U.S. Dollars and 00/100 ($31,000.00) in attorneys' fees and expenses. The Parties hereby represent, warrant, and agree that this issue was discussed and negotiated separately and apart from the amounts payable to the Plaintiff and Claimants so as not to affect Plaintiff's and Claimants recovery in this Lawsuit, and only after other material terms in the Settlement were agreed upon. In the event the Court orders reasonable attorneys' fees, the Parties agree in advance that payment should be made directly to DiCello Levitt Gutzler LLC and includes all fees and costs payable to the designated attorneys of Plaintiff and Claimants. Further, the Parties agree in advance that all necessary IRS Form 1099s will be issued to Plaintiff, Claimants, and Plaintiff's counsel, respectively, for these fees and costs or any other payments required to be reported on IRS Form 1099.

5. **Timing of Settlement Payments:**

a. There shall be no responsibility to tender the payments outlined in Sections 3 through 4 above on behalf of MLK Express, until the later of: (a) thirty (30) days after MLK Express's counsel receives notice that the Court has issued approval of the proposed collective action settlement and this Agreement; and (b) 30 days after Plaintiff's counsel provides certification of the Final Payment Schedule.

b. Two checks will be issued to Plaintiff. The first check issued to Plaintiff will account for 50% of Plaintiff's Final Individual Settlement Amount and it will represent wages and shall be reflected on an IRS Form W-2. The second check issued to Plaintiff will account for the remainder of Plaintiff's Final Individual Settlement Amount, plus, the full amount of Plaintiff's Service Award, if approved by the Court, and it will represent a non-wage payment (including the Service Award, if approved) and shall be reflected on an IRS Form 1099.

c. Two checks will be issued to each Claimant. The first check issued to each Claimant will account for 50% of each Claimant's Final Individual Settlement Amount, and it will represent wages and shall be reflected on an IRS Form W-2. The second check issued to each Claimant will account for the remaining 50% of each Claimant's Final Individual Settlement Amount, and it will represent a non-wage payment and shall be reflected on an IRS Form 1099.

d. Plaintiff and each Claimant, upon joining the case by filing their Consent to Join forms, agree to allow the representatives preparing the necessary tax forms to use their respective last IRS Form W-4 on file when preparing any wage checks for them related to the settlement payments. Plaintiff and each Claimant, upon joining the case by filing their Consent to Join forms, further agree to direct that an IRS Form W-9 be completed by Plaintiff's counsel, Henrichsen Siegel, P.L.L.C. and DiCello Levitt Gutzler, LLC., for Plaintiff and each Claimant receiving payment before receiving payment for attorneys' fees and expenses. Plaintiff's counsel will be solely responsible for distribution of the Final Individual Settlement Payments provided on behalf of MLK Express. Plaintiff and each Claimant, upon joining the case by filing their Consent to Join forms, understand and agree that the Final Individual Settlement Payments set forth in Paragraphs 2 and 3 above (which includes all back wages allegedly due Plaintiff and Claimants as a result of their employment with MLK Express, as well as all costs and attorneys' fees) are all that Plaintiff and Claimants are entitled to receive from the Released Parties as settlement of any and all of the FLSA or state wage claims Plaintiff and Claimants have raised, or could have raised, against Released Parties in the Lawsuit or in any other action against the Released Party, at any time up to and including the date of this Agreement and the dismissal of this Lawsuit.

e. At the time identified in subsection a. above, the settlement checks will be mailed to Plaintiff's counsel, Laura E. Reasons, Ten North Dearborn Street, Eleventh Floor, Chicago, Illinois 60603. Plaintiff's counsel shall promptly provide counsel for MLK Express written confirmation of the receipt of the Final Individual Settlement Payments.

f. The Parties agree that Final Individual Settlement Payments shall be mailed by Plaintiff's counsel to Plaintiff and Claimants no later than fourteen (14) calendar days after the

receipt of the payments identified on the certified Final Payment Schedule. Within seven (7) calendar days of the mailing of the checks for the Final Individual Settlement Payments, Plaintiff's counsel shall provide counsel for MLK Express confirmation that all such checks were mailed to Plaintiff and each Claimant.

   g. Within one hundred and twenty-one (121) calendar days and one hundred and thirty (130) calendar days after checks are issued by MLK Express, Plaintiff's counsel and counsel for MLK Express shall work together to identify the following information: (i) the names of all individuals who have negotiated the Final Individual Settlement Payments checks; (ii) the names of all individuals to whom checks were mailed, but who have not negotiated their Final Individual Settlement Payments checks; and (iii) the names of all individuals whose Final Individual Settlement Payments checks were returned or otherwise undeliverable.

   h. The checks issued to Plaintiff and Claimants pursuant to this Agreement shall remain negotiable for a period of one hundred and twenty (120) calendar days from the date of mailing to Plaintiff's counsel and may be canceled after that if they are not cashed at that time. Plaintiff or any Claimant who fails to negotiate or deposit their respective checks representing their Final Individual Settlement Payments during the negotiable period shall remain subject to the terms of this Agreement. All funds from checks not cashed timely will revert to MLK Express, except that, if any Plaintiff or Claimant comes forward within 30 days after the expiration of their checks, requesting a new check, MLK Express will reissue their check(s) within a reasonable amount of time, and the reissued checks under this provision shall remain negotiable for a period of ninety (90) calendar days from the date of mailing to Plaintiff's counsel and may be canceled after that if they are not cashed at that time..

   i. Nothing within this section shall be construed to prevent the Plaintiff's counsel from contacting Plaintiff or Claimants to inform them of the expiration of their Settlement Payment.

  **6.** **<u>Settlement Approval, Notice and Consent to Join forms</u>**: The Parties agree that, solely for the purposes of resolving the Lawsuit and for purposes of this Agreement and its implementation, they shall jointly seek this Lawsuit's certification as a collective action a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 201, *et seq.* If for any reason the Court does not approve the motion or stipulation or does not enter an order granting approval, or if this Settlement is lawfully terminated for any other reason, any certification of the collective action pursuant to this Settlement shall become null and void. And regardless, the fact of certification shall not be cited to, used, or be admissible in any other judicial, administrative or arbitral proceeding for any purpose or with respect to any issues, substantive or procedural.

   a. The Parties agree to recommend approval of this Agreement by the Court—including by participating in an unopposed or joint motion for approval–and to recommend participation in the Agreement by any Drivers. The Parties agree to undertake their best efforts, including any and all steps and efforts that may become necessary by order of the Court or otherwise, to effectuate the terms and purposes of the Agreement, and to secure the Court's

approval. At no time shall any of the Parties or their counsel seek to discourage any Drivers from joining the settlement or to encourage appeal of the Court's approval of the Settlement, provided that the Court's approval does not alter any material terms of this Agreement. To that end, the Parties shall jointly seek approval of the Agreement and all proposed forms, orders and judgments, including but not limited to this Agreement and all attached exhibits, all of which shall be included in and filed with the motion, in the manner directed by this Agreement. Further, the terms and conditions of the Parties' Joint Stipulation for Certification and Issuance of Notice are incorporated by reference into this Agreement.

      b. The Parties further agree to seek certification of the collective action utilizing the proposed Notice and Consent to Join forms attached as Exhibits "3" and Exhibits "4."

      c. A decision by the Court to enter an order approving the Agreement with modifications (other than modifications reducing the proposed amount of the award of attorneys' fees and expenses, the Administrative Costs, or the amount of the Service Award) that any of the Parties determines in their reasonable and good faith judgment to be material, will be discretionary grounds for that Party to terminate this Agreement by providing written notice to the other Party and the Court within fourteen (14) calendar days of receipt of the Court's decision. For the avoidance of doubt, any decision by the Court modifying the Agreement to require any defendant to pay more than the agreed Gross Settlement Amount, a Service Award greater than the amount set forth in Section 2(a), or attorneys' fees and expenses greater than the amount set forth in Section 4 shall constitute *per se* good faith basis for a Party to withdraw from this Agreement. Nevertheless, the Agreement shall still remain in effect for all remaining Parties who have not withdrawn if at least one defendant and one Plaintiff or Claimant have not withdrawn.

      **7.** **Release in Exchange for Payments:** In exchange for the settlement payments detailed herein, Plaintiff hereby releases and forever discharges, and Claimants, upon joining the case by filing their Consent to Join Forms, will release and forever discharge, MLK Express Services, LLC, Amazon.Com Services, Inc., their respective owners, shareholders, members, managers, officers, partners, directors, employees, representatives, agents, trustees, administrators, executors, fiduciaries, attorneys, insurers, reinsurers, underwriters, parent entities, subsidiary entities, affiliated and/or related entities, divisions, joint venturers, contractors, subcontractors, general contractors, contracting parties of any type or kind, employee benefit plans, predecessors, any merged entity, and any successors-in-interests, heirs, and assignees (collectively the "Released Parties"), from any and all claims, causes of actions, demands, debts, obligations, damages or liability of any nature whatsoever, known or unknown, relating to claims for unpaid compensation or wages of any kind, including without limitation, unpaid wages, overtime, unpaid minimum wages, bonuses, or commissions; any and all claims under the Fair Labor Standards Act ("FLSA"), including claims for back pay or liquidated damages; all rights and benefits under state wage laws, including Article X, § 24 of the Florida Constitution and Fla. Stat. § 448.110, and all claims for attorneys' fees, costs, and interest, including, but not limited to, any claims for attorney's fees related to services rendered by Plaintiff's attorneys of record in the Lawsuit and/or any other attorney who has provided

services to Plaintiff, which Plaintiff has brought or could have brought through the date of Plaintiff's execution of this Agreement. Any and all such claims, without limitation, shall be referred to as "Claims."

It is the intent of Plaintiff and Claimants—by joining the case by filing their Consent to Join forms—to release all Claims (as defined above) which they are permitted by law to release as part of this Litigation. Additionally, Plaintiff and Claimants respectively agree and acknowledge that they shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Claims identified in this section.

Further still, Plaintiff and Claimants, upon joining the case by filing their Consent to Join Forms, each respectively acknowledge, agree, and understand that this release is a full and final bar to any and all Claims, known or unknown, that they respectively had, has, or may now have against the Released Parties relating to the Claims, including those for unpaid compensation or wages of any kind, and without limitation, any claims for unpaid wages, overtime, minimum wages, bonuses, or commissions that could be brought in the Lawsuit up through the effective date of the Agreement and the Lawsuit's dismissal (whichever is later, if different). Plaintiff and Claimants, upon joining the case by filing their Consent to Join Forms, each respectively agree that the payments they are receiving under this Agreement's terms fully compensates them for any such claims for wages or compensation, attorneys' fees, or costs. It is likewise acknowledged and agreed by Plaintiff and Claimants, upon joining the case by filing their Consent to Join Forms, that they have no other payments or monies due to them of any kind from any of the Released Parties.

Plaintiff and Claimants, upon joining the case by filing their Consent to Join forms, also each covenant and agree that they will not participate in any other legal actions against the Released Parties for claims released by this settlement. Plaintiff and Claimants each further covenant and agree that they will: (1) refrain from participating in or "opting-in" to; (2) dismiss or withdraw from; or (3) "opt-out" or withdraw from, any other actions for which they are a party for Claims released by this settlement, if they become aware of such actions.

So that all Claimants are fairly and reasonably informed about the existence, nature, and binding effect of the foregoing release of claims, the full text of the release language shall be appended to the body of the Notice.

**8.  Tax Indemnification**: Plaintiff and each Claimant, upon joining the case by filing their Consent to Join forms, further agree to and shall indemnify, defend, and hold harmless the Released Parties from and against any and all liabilities, penalties, costs, and expenses of any type, kind, or nature, arising from any failure to properly report and/or pay taxes upon amounts paid to Plaintiff or Claimants, respectively, that are reported on an IRS Form 1099.

Plaintiff's counsel agrees to and shall indemnify, defend, and hold harmless the Released Parties from and against any and all liabilities, penalties, costs, and expenses of any type, kind, or nature arising from Plaintiff's counsel' failure to properly report or pay taxes upon amounts paid to Plaintiff's counsel in connection with this Settlement.

**9. Dismissal of Action:** Upon execution of this Agreement by the designated representatives of the Parties, the Parties agree to file (either jointly, or as an unopposed motion filed by Plaintiff) a motion or stipulation for certification of a collective action and notice, approval of this Agreement, and dismissal. If approval is granted after all payments have been made pursuant to this Agreement, the Parties shall seek a dismissal *with prejudice*. If approval is granted before payments are made, the Parties shall seek a dismissal *without prejudice*, to automatically convert to a *with prejudice* dismissal on a date certain when the Parties will have had adequate time to fully effectuate the terms of this Agreement, including making all payments under the Agreement. The Parties shall file the stipulations or motions as soon as possible to effectuate prompt and full payment under this Agreement.

**10. Effect of Failure to Grant Approval**: In the event this Agreement is not approved by the Court or is reversed on any appeal, or is terminated for any other reason, the Agreement and the certification of the Lawsuit as an FLSA collective action shall become null and void and have no further force and effect whatsoever, and the Parties shall be restored without prejudice to their respective positions as if the Agreement and application for its approval had not been made. If the Court refuses to approve the settlement, or if the Court's order approving the settlement is reversed on appeal, the Agreement and any negotiations, statements, communications or related proceedings, and the fact that the Parties agreed to the Agreement, shall be without prejudice to the rights of any of the Parties, shall not be used for any purpose whatsoever in any subsequent proceeding in this action or any other action in any court or tribunal, and shall not be construed as an admission or concession by any Party of any fact, matter or allegation. The Parties further agree to jointly move the Court to vacate all orders issued pursuant to the Agreement in the event it is not approved by the Court, is reversed on any appeal, or is otherwise terminated for any other reason.

**11. No Admission of Liability:** The Parties acknowledge that this Agreement and settlement of Claims and the payments made herein were executed in connection with the settlement of disputed and doubtful claims. It is understood and agreed that the Agreement and any negotiations, statements, communications or related proceedings, and the fact that the Parties agreed to the Agreement, shall be without prejudice to the rights of any of the Parties, shall not be used for any purpose whatsoever in any subsequent proceeding in this action or any other action in any court or tribunal, and shall not be construed as an admission or concession by any Party of any fact, matter or allegation. It is further understood and agreed that this Agreement and any negotiations, statements, communications or related proceedings, and the fact that the Parties agreed to the Agreement, is not, and is not to be construed as, an admission of any liability or fault by any Party.

**12. Plaintiff's Competency:** At the time of considering and executing this Agreement and at the time of signing this Agreement, Plaintiff agrees Plaintiff was not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Plaintiff acknowledges that Plaintiff is competent to execute this Agreement and that Plaintiff is not a party to any bankruptcy, lien, creditor-debtor or other proceeding which would impair Plaintiff's right or ability to waive all claims Plaintiff may have against the Released Parties.

Plaintiff affirmatively states Plaintiff understands all of the terms of this Agreement and that Plaintiff voluntarily agrees to them.

**13. Third Party Beneficiary:** Defendant, Amazon.Com Services, Inc., and its divisions, merged entities, parent entities, subsidiary entities, affiliated, and/or related entities shall be third-party beneficiaries to this Agreement and are entitled to all rights and benefits that would inure to their benefit and enforce any rights under this Agreement as if they were a party to this Agreement.

**14. Authority to Enter Into Agreement:** MLK Express's representative, in signing this Agreement, represents and warrants that the individual is duly authorized and has legal capacity to execute and deliver this Agreement. Each party represents and warrants to the other that the execution of the Agreement and the performance of such party's obligations under this Agreement have been duly authorized and that the Agreement is a valid and legal agreement binding on such party and enforceable in accordance with its terms.

**15. Integration:** This Agreement contains the entire agreement between the Parties concerning resolution of the claims in the Lawsuit.

**16. Advice of Attorney/Opportunity to Review:** Each Party represents and warrants that in executing this Agreement, such Party has relied upon legal advice from its own attorney(s); that the terms of this Agreement have been read and its consequences have been completely explained to that Party by its respective attorney(s), if any, and that each such Party fully understands the terms of this Agreement. Each Party further represents and warrants that in executing this Agreement it has not relied on any inducement, promise or representation by any other Party, or any person representing or acting on behalf of any such Party, not otherwise contained herein. Each Party represents and warrants that its execution of this Agreement is free and voluntary. The Parties understand and agree that, if the law or facts with respect to which this Agreement is executed are found hereafter to be other than, or different from, the law and facts now believed by the Parties to be true, the Parties expressly accept and assume the risk of such possible differences in law or facts and agree that the Agreement shall be and remain effective notwithstanding any such difference.

**17. Binding Agreement:** This Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective heirs, personal representatives and other legal representatives, parents, subsidiaries, affiliates, predecessors, successors, and assigns. No provision of this Agreement may be amended or waived, except by a statement in writing signed by the Party against which enforcement of the amendment or waiver is sought.

**18. Cooperation:** The Parties to this Agreement agree to cooperate fully and execute any supplemental documents and to take any additional actions which may be necessary or appropriate to give full effect to the terms and intent of this Agreement.

**19. Severability:** Aside from the provisions designated material in Section 6(c), should any other provision of this Agreement be invalid or unenforceable for any reason, the remaining provisions in this Agreement shall remain in full force and effect.

**20. <u>Breach or Violation of Agreement</u>**: It is further understood and agreed that if, at any time, a material violation of any term of the Agreement is asserted by any Party hereto, that Party shall be entitled to seek injunctive relief, including, but not limited to a temporary restraining order and/or a preliminary or permanent injunction to restrain or enjoin any violation or threatened violation of this Agreement. Injunctive relief shall be in addition to, and not in lieu of, any other remedy that may be sought.

**21. <u>Construction:</u>** This Agreement has been jointly negotiated. The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any Party. Each Party specifically waives the application of the common law doctrine that agreements are to be construed against the Party who drafted the Agreement.

**22. <u>Headings:</u>** The section headings in this Agreement are for convenience of reference and shall not expand, modify, limit, or define the text of this Agreement.

**23. <u>Governing Law:</u>** The Parties hereto agree that the law governing the creation, interpretation, and enforcement of this Agreement is the law of the State of Florida. Each of the undersigned parties hereby consents to the personal jurisdiction of the United States District Court for the Middle District of Florida, for purposes of any action to enforce, or for breach of, this Agreement.

**24. <u>Legal Proceedings:</u>** If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs, in addition to any other relief to which it may be entitled.

**25. <u>Execution:</u>** For the convenience of the Parties, this Agreement may be executed in counterparts each of which shall be deemed an original but all of which taken together shall be deemed one instrument. Execution may be by email or fax, and a signed copy, sent by email or facsimile, shall have the same force and effect as an original document.

**PLAINTIFF**

_____
Linda Burns, *on behalf of herself and all Claimants*

Date: _____

against any Party. Each Party specifically waives the application of the common law doctrine that agreements are to be construed against the Party who drafted the Agreement.

**22. Headings:** The section headings in this Agreement are for convenience of reference and shall not expand, modify, limit, or define the text of this Agreement.

**23. Governing Law:** The Parties hereto agree that the law governing the creation, interpretation, and enforcement of this Agreement is the law of the State of Florida. Each of the undersigned parties hereby consents to the personal jurisdiction of the United States District Court for the Middle District of Florida, for purposes of any action to enforce, or for breach of, this Agreement.

**24. Legal Proceedings:** If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs, in addition to any other relief to which it may be entitled.

**25. Execution:** For the convenience of the Parties, this Agreement may be executed in counterparts each of which shall be deemed an original but all of which taken together shall be deemed one instrument. Execution may be by email or fax, and a signed copy, sent by email or facsimile, shall have the same force and effect as an original document.

**PLAINTIFF**

*/s/ Linda Burns*
DocuSigned by: C57122799EF943D...

Linda Burns, *on behalf of herself and all Claimants*

Date: 5/23/2019

MLK EXPRESS SERVICES, LLC

By: _____

Print Name: Manihong Phanouvong

*As Authorized Representative*

Title: Managing member

Date: 5/23/19